## OGLEY *v.* MILES *et al.*

*(Supreme Court, General Term, Fifth Department.   December 30, 1889.)*

MASTER AND SERVANT—DUTY OF MASTER—INEXPERIENCED SERVANTS.

Plaintiff, a boy 16 years old, under size for his age, while in the employ of defendants, doing "general boy's work," was put to operating a buzz-saw, without previous instruction in its use, and was injured by it. It appeared that he was not tall enough to operate the machine. *Held*, that it should have been submitted to the jury to find whether the boy was of sufficient size to operate a saw with safety to himself, and whether, in view of his youth, proper care was taken to instruct him in the use of the machine, in respect to the precautions necessary to be taken to protect himself from injury.

On exceptions from circuit court.

Action by Albert E. Ogley against William E. Miles and others, for damages resulting from injuries inflicted by a buzz-saw. Verdict for defendant. Motion by plaintiff for new trial.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*Thomas Raines,* for plaintiff.   *Theodore Bacon,* for defendants.

DWIGHT, J.  The action was for damages resulting from a bodily injury sustained by the plaintiff while operating a buzz-saw, in the employment of the defendants, who were manufacturers of sash and blinds.  The plaintiff was at the time less than 16 years old, and was small of his age.  He had worked in sash and blind factories at times during the three of four previous years, but generally at light hand-work; had two or three times been put at work at a buzz-saw, but only for a few hours at a time, and never at work of a character similar to that in which he was engaged when he received the injury complained of.  He had seen buzz-saws operated, and knew from general reputation that they were dangerous machines, but had no practical experience of their dangers, or how to avoid them, and had never witnessed an accident from the use of a saw.  He had been two weeks in the defendant's shop, at work at what the foreman described as "general boy's work;" such as mortising, boring, sticking, pointing pins, sweeping, picking up kindling wood, and such work.  On the day before the accident one of the defendants came to him, and asked him if he could saw.  He testifies: "I told him 'No,' but I supposed I could learn, and that I would have to learn if I learned the trade."  The defendant then took him to the foreman, and told the latter to put him at the saw, and set him to sawing.  The foreman did so.  The saw was used for slitting blocks or short pieces of lumber into narrow strips.  It was stationary, revolving in the midst of a table, upon which the blocks or pieces to be sawed were laid flat, and pushed against the saw.  This required a force which at the same time propelled the block, and held it down to a table.  The block was sawed through to the end, so that at the end of each slitting the hand or instrument by which the block was held and propelled was brought up to or even with the edge of the saw.  It was usual for the operator to use for this purpose a pusher or stick, 12 or 15 inches long, with a notch in the end.  The plaintiff testified that nothing was said to him by the foreman about the use of the pusher, and that he could not make use of it, because he was not tall enough; of which the explanation suggested is that he did not stand high enough to bring his weight to bear on the end of the pusher, so as to hold the block down to the table.  He testified that he was obliged to raise himself on tip-toe, and reach over as far as he could reach, to put the block through with his hand.  He received no instructions in regard to the operation of the saw, or the dangers to be avoided in its use.  The foreman merely set the gauge at the required width, and told the boy to go to work and saw up the pieces which lay in a pile near the table.  He sawed that day (Saturday) until noon; on Monday morning resumed the work, and continued it until the accident occurred, shortly before noon of that day.  There was some reason to suppose that the immediate cause of the accident was a worm hole in the end of the piece he was sawing at the moment, which could not be seen until it was cut open by the saw, and that the sudden acceleration of the motion of the block, when the saw struck into the worm hole, threw his hand against the teeth of the saw.

We think this case should have gone to the jury upon at least two questions presented by the evidence:  *First*, whether the boy was of sufficient size to operate a saw with reasonable expectation of safety to himself; and, *second*, whether, in view of his youth and relative inexperience, reasonable care was taken to instruct him in the proper use of the machine, and in regard to the precautions proper to be taken to protect himself from injury in its use.  A negative answer to either of these questions, in the absence of contributory negligence on his part, would probably entitle the plaintiff to a verdict.  It was undoubtedly the duty of the defendants to exercise reasonable care in the selection of the person to operate the saw; and an important element in the selection may have been the size or height of the operator.  If it was true that this boy was not tall enough to operate the machine with reasonable safety, and the fact was apparent to his employers, with their knowledge of

the requirements of the operation, then it was negligence on their part to put him at the work.

It was also their duty to give him such instructions in the use of the machine, and in respect to the dangers to be avoided, as the youth and inexperience of the employe made necessary. His youth was probably apparent. It was their duty to exercise some care to ascertain what experience he had had in the operation of buzz-saws. According to the evidence in the case, the only question asked him on that subject was if he could saw, and his answer was that he could not, but he supposed he could learn. This was certainly not such information as should have encouraged the defendants to set him at work on a dangerous machine, without instruction in its use.

The case of *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. Rep. 286, which is cited by counsel on both sides of this argument, seems to be authority for the contention of the plaintiff on the last proposition considered. There the court, by PECKHAM, J., says: "There is no doubt that, in putting a person of immature years at work upon machinery which in some respects may be termed dangerous, an employer is bound to give the employe such instructions as will cause him to understand and fully appreciate the difficulties and dangers of his position, and the necessity there is for the exercise of care and caution;" and the proposition is emphasized to the effect that mere formal instruction is not sufficient, but that such person, so employed, must be brought to an actual understanding of the dangers, and be made to appreciate them, and the consequences of the want of care. It that case it was held that a nonsuit should have been granted, because it was conclusively shown by the evidence of the plaintiff herself, that she "was aware of, and fully appreciated and understood, the dangers to be apprehended from working the machine;" and that it was equally clear, from the same source of information, that she was perfectly competent to operate the machine long before the accident occurred; that she had acquired her knowledge from practical experience, and knew all that the defendant could have told her on that subject.

The evidence in this case certainly does not conclusively establish the facts upon which it was held, in that case, that the nonsuit should have been granted, but, on the contrary, made, as we think, a fair question for the jury upon both of the propositions which we have considered. If so, the nonsuit was improperly granted, and the motion for a new trial must prevail. All concur. New trial granted, with costs to abide the event.