# Richmond.

LYNCHBURG COTTON MILLS v. STANLEY.

MARCH 24, 1904.

Absent, Cardwell, J.

1. BILL OF EXCEPTION—*When Perfected—Acts* 1901, *p.* 186.—Where an action is argued and submitted at one term of a court and decided at a later term the parties have, under Acts 1901, p. 186, thirty days after final judgment, or such time as the parties shall agree of record, within which to perfect exceptions duly taken to rulings during the trial. The object of the act was to extend the time within which bills of exception might be taken.

2. CONTRIBUTORY NEGLIGENCE—*Infants—Burden of Proof.*—The law presumes that an infant between seven and fourteen years of age cannot be guilty of contributory negligence, and, in an action by such infant to recover for a personal injury inflicted by the alleged negligence of the defendant, the burden is on the defendant to overcome this presumption by proof of intelligence and capacity.

3. MASTER AND SERVANT—*Infant Servant—Warning of Dangers—Case at Bar.*—A master who employs infants of tender years to work in places of danger is chargeable with the highest degree of responsibility for their care and protection. He should instruct them plainly and repeatedly as to the dangers to which they are subjected, and how to avoid them. He should be sure that they fully understand and appreciate his instructions and warnings, and in view of their proneness to forget, the instructions and warnings should be from time to time renewed. In the case at bar a boy under twelve years of age was employed in a mill where he had to pass frequently through a room filled with machinery, belts and pulleys, without any warning from the master as to dangers from the machinery, and how to avoid them, and, while playing with a belt on the moving machinery, received the injury complained of. The master was held liable.

4. DAMAGES—*Personal Injury—Loss of Time of Infant.*—In estimating the damages for a personal injury negligently inflicted on a boy under twelve years of age who has neither natural nor legal guardian, and who, so far as appears, is working for his own living, and receiving his own wages, his loss of time is a proper element for consideration by the jury.

Error to a judgment of the Circuit Court of the city of Lynchburg in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Horsley, Blackford & Kemp* and *P. H. C. Cabell,* for the plaintiff in error.

*Don. P. Halsey,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Fitzhugh Stanley, suing by his next friend, to recover damages from the Lynchburg Cotton Mills for injuries sustained by the plaintiff in consequence of the alleged negligence of the defendant.

There was a demurrer to the evidence, which was overruled by the Circuit Court, and judgment given in favor of the plaintiff for $5,000, the damages ascertained by the jury. It is insisted that bills of exception Nos. 1, 2, and 3, taken by the defendant, are not parts of the record, because the bills were not signed within thirty days from the adjournment of the term of the court at which the decisions were rendered to which they object. Acts 1901, p. 186, c. 172.

This position is not tenable. The objections were taken and overruled at the November term, 1902. Upon the demurrer to

the evidence the court took time to consider, and did not render its judgment until the next term.    Within thirty days from this last-named term, at which the final judgment was rendered, the bills of exception in question were signed.    As the law stood prior to the act relied on, the bills of exception could have been signed at the April term, 1903, at which the final judgment was entered.    *Hudgins* v. *Simon,* 94 Va. 659, 27 S. E. 606.    The act cited, of February 15, 1901, was intended to extend the time within which bills of exception could be tendered and signed. Until the final judgment is rendered, the case is open for the purpose of perfecting exceptions duly taken to rulings during the trial.    The act extends the time in which they may be perfected for thirty days beyond the final judgment, or until such time as the parties shall agree, of record, to extend it.    If the contention now made were to prevail, the result would be that the act which was plainly intended to enlarge the time, would be converted into a means of curtailing such rights by giving litigants less time in which to perfect their bills of exception than they had before the act was passed.

For convenience, we will consider the bills of exception in their inverse order.

The fourth bill of exceptions presents the real question in the case, to which the arguments, both written and oral, have been almost exclusively devoted; that is, whether or not the court erred in overruling the demurrer to the evidence.    At the time of the injury complained of, the plaintiff was a boy not quite twelve years of age.    He was employed by the defendant company to work in its bagging room as a "doffer"—that is, work on the spinning frames in taking off and putting on bobbins— and had been engaged in this and other employment for several weeks.    Adjacent to the bagging room was a large carding room in which fifty-one carding machines were operated.    These carding machines were located in rows, with alleys between each row, and a space seven feet eight inches wide around the entire

room next to the walls.   It was necessary for the employees in the bagging room to go through the carding room to reach the water-closet, and the route usually taken for this purpose was around the walkway next to the walls.   On the occasion of the accident the plaintiff was pursuing this route on his way to the water-closet, when he came upon several small boys, his companions from the bagging room, who were playing with the belt of one of the carding machines by throwing it off and on the revolving wheels.   The plaintiff had never engaged in such sport, but it appealed to his childish instincts, and he stopped, and began to engage in the performance himself.   He had hardly begun to do so when his arm was caught between the belt and the pulley, and so seriously injured that it had to be amputated above the elbow.   It is further shown that it was a common thing for the boys about the mill to play with the belts, and that this fact was known to those in charge of the machinery and other departments.   It is established by the testimony of the plaintiff, which, under the demurrer to the evidence, must be taken as true, that he had frequently seen boys play with the belts as on this occasion; that he did not know it was dangerous; and that he had never at any time been warned against doing so, or received instruction of any sort with respect to the dangers surrounding him.   There must have been a peculiar fascination in throwing the belts off and on as these boys were doing, for the superintendent of the mills testifies that he had seen grown men play with the belts.

The law presumes that an infant between seven and fourteen years of age cannot be guilty of contributory negligence, and in an action by such infant the burden is on the defendant to overcome this presumption, by proof of intelligence and capacity. *Roanoke* v. *Shull,* 97 Va. 419, 34 S. E. 34, 75 Am. St. Rep. 791.   The defendant made no effort to overcome this presumption.   Indeed, as said by the learned judge of the Circuit Court, "so far as any conclusion as to the plaintiff's intelligence can

be drawn from his testimony, it is of an unfavorable character." The single inquiry here is, therefore, was the defendant guilty of negligence in the discharge of its duty to this little boy? The degree of care due by the master to an infant employee of tender years is much greater than is due to an adult. That course of conduct which would be ordinary care when applied to persons of mature judgment and discretion might be gross, and even criminal, negligence toward children of tender years. The same discernment and foresight that older people and experienced persons habitually employ in discovering dangers cannot be reasonably expected of children of tender years, and therefore the greater precaution should be taken where children are exposed to such dangers. Under the head of "Special Duties of Masters to Minors," the duty of one who employs young persons is thus stated in section 219 of Shearman and Redfield on Negligence, by the learned authors of that valuable work: "It is the duty of one who employs young persons in his service to take notice of their apparent age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they ought not to be exposed. This is a duty which cannot be delegated; and any failure to perform it leaves the master subject to the same liability with respect to such risks, as if the child were not a servant. For this purpose the master must instruct such young servants in their work, and warn them against the dangers to which it exposes them, and he must put this warning in such plain language as to be sure that they understand and appreciate the danger. For it is not enough that he should do his best to make children understand. They must not be exposed to dangers which they do not fully understand in fact. Bearing in mind the natural forgetfulness of youth, he must renew this warning from time to time, as may be reasonably necessary. And if the servant has not capacity enough to understand the warning and appreciate the danger, or for any other reason does not in fact understand it, the master

will be liable for any injury which such servant may suffer in consequence, if continued at such work. But the master is not required to point out dangers which are known, or must be obvious to and fully appreciated by, the servant, after making due allowance for his youth. Generally, this question is for the jury."

In Thompson on Neg. 978, it is said: "The law puts upon a master, when he takes an infant into his service, the duty of explaining to him fully the hazards and dangers connected with the business, and of instructing him how to avoid them. Nor is this all. The master will not have discharged his duty in this regard unless the instructions and precautions given are so graduated to the youth, ignorance and inexperience of the servant as to make him fully aware of the danger to him, and to place him, with reference to it, in substantially the same state as if he were an adult."

In Bailey on Per. Inj. section 2766, it is said: "Persons who employ children to work with dangerous machinery or in dangerous places should anticipate that they will exercise only such judgment, discretion, and care as is usual among children of the same age under similar circumstances, and are bound to use due care, having regard to their age and inexperience, to protect them from dangers incident to the situation in which they are placed; and as a reasonable precaution in the exercise of such care in that behalf it is the duty of the employer to so instruct such employees concerning the dangers connected with their employment, which dangers, from their youth and inexperience, they may not comprehend or appreciate, that they may, by the exercise of such care as ought reasonably to be expected of them, guard against and avoid injuries arising therefrom." And further adds that an infant who, by reason of his youth and inexperience, is injured, when not properly instructed and warned as to the dangers incident to his work, may recover therefor.

In Watson on Per. Inj., section 114, it is said: "The de-

fendant will be liable if negligent, though it is the act of the child injured which is proximate to his own injuries, if such act is of a character naturally to be expected of a child, and in accordance with the usual indiscretions and errors of judgment characteristic of immature years."

The statement of the law by these authors of acknowledged accuracy and ability is sustained by numerous decisions of the courts of last resort throughout the country. *Sullivan* v. *India Mfg. Co.,* 113 Mass. 399; *Rock* v. *Orchard Mills,* 142 Mass. 528, 8 N. E. 401; *Glover* v. *Dwight Mfg. Co.,* 148 Mass. 22, 18 N. E. 597, 12 Am. St. Rep. 512; *Ogley* v. *Miles* (Sup.) 8 N. Y. Supp. 270; *Hickey* v. *Taaffe,* 105 N. Y. 26, 12 N. E. 286; *Smith* v. *Irwin,* 51 N. J. Law 507, 18 Atl. 852, 14 Am. St. Rep. 699; *Rolling Mill* v. *Cooper etc.,* 131 Ind. 363, 30 N. E. 294; *Hinckley* v. *Horazdowsky,* 133 Ill. 359, 24 N. E. 421, 8 L. R. A. 490, 23 Am. St. Rep. 618; *Harris* v. *Shebek etc.,* 151 Ill. 287, 37 N. E. 1015; *Fish etc.* v. *R. R. Co.,* 72 Cal. 38, 13 Pac. 144, 1 Am. St. Rep. 22; *Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232, 19 S. W. 600; *Fitzgerald* v. *Furniture Co.,* 131 N. C. 636, 42 S. E. 946; *Cleveland Rolling-Mill Co.* v. *Corrigan,* 46 Ohio St. 283, 20 N. E. 466, 3 L. R. A. 385.

The rule established by the authorities cited is both just and humane. Children of tender years are often employed about factories filled with complicated and dangerous machinery, where they will be exposed to revolving wheels, belts and pulleys, where any one may know that, by reason of inexperience and immature judgment, they are liable to be killed or maimed. In the case under consideration there are, as shown by the record, employed in the mills of the defendant company seventy-five children under fourteen years of age, of which number forty-five are under the age of twelve years. If it is to the interest of manufacturing establishments to employ infants of such tender years, with their immature judgment and lack of experience, not only the dictates of humanity, but public policy, demands

that they should be held to the highest degree of responsibility for their care and protection. They must take knowledge of their childish disposition to play, and to play with fire, and of their inability to recognize danger, although open and obvious to those of riper years. They must instruct them as to the many dangers with which they are surrounded, and the way to avoid such dangers; and they must continue to repeat such instruction until they know the danger is fully understood and appreciated. And, in view of the proneness of children to forget, they must from time to time renew these instructions, warnings and cautions. Of the existence of the rule requiring these duties of the master, and of its pre-eminent justice, there can be no doubt, and we are of opinion that the case at bar is clearly within its influence. The plaintiff was an ignorant child, less than twelve years of age, without father, mother, or legal guardian. In these cotton mills he was surrounded by innumerable dangers. He was put to work in a position where, upon every call of nature, he was compelled to pass through a large carding room filled with machinery, with its countless revolving wheels and belts. He was subjected to all these perils without instruction or warning from his employers with respect to such dangers, or how to act in order to avoid them. He was left to his own resources and immature judgment, with the natural result that, in ignorance of the danger, he was guilty of an act which brought upon him a calamity that compels him to a maimed and comparatively helpless life. Such want of care and watchfulness over the immaturity of tender years by the master renders him liable under the rule of duty that we have seen he must observe.

The third bill of exceptions is to the action of the court in giving an instruction which provided that the jury might, in estimating the plaintiff's damage, take into consideration, among other things, his loss of time, and any other elements of damage necessarily occasioned by or growing out of said injury.

The plaintiff had neither a natural nor legal guardian who

was entitled to his wages, and, so far as the record throws any light on the subject, he was working for his living and receiving his own wages. Under these circumstances his time was his own, and he was entitled to compensation for its loss. As to the second ground of objection, the language expressly limits the recovery to the elements of damage necessarily occasioned by or growing out of the injury, and there was no error in its use.

The second and first bills of exception are to the action of the court in admitting certain evidence tending to establish negligence on the part of the defendant in not having fenced the machinery off, the objection being that the evidence was immaterial, and the witnesses deposing on the subject not experts.

In the conclusion we have reached this evidence has played no part, and therefore the defendant has suffered no prejudice by its introduction, even if it was inadmissible, as to which we express no opinion.

For these reasons the judgment of the Circuit Court must be affirmed.

*Affirmed.*