Syllabus.

## Wytheville.

Virginia Iron, Coal & Coke Co. v. Tomlinson's Administra-

TOR.

June 28, 1905.

1. EVIDENCE—*Experts—Common Knowledge—Harmless Error.*—Expert evidence touching matters of common knowledge is not admissible, but if admitted it is harmless error.

2. EVIDENCE—*Experts—Qualifications.*—The qualifications of a witness to testify as an expert being largely in the discretion of the trial court, the admission of such testimony will not be reviewed unless it clearly appears that the witness was not qualified.

3. EVIDENCE—*Experts—Opinions.*—If the evidence tends to prove the facts hypothetically stated in a question put to an expert, he may, in a proper case, give his opinion thereon.

4. MASTER AND SERVANT—*Dangerous Place—Warning—Other Dangerous Places.*—The negligence of a master in not warning an infant employee of dangers at his place of work cannot be established by evidence that other infants were permitted, with his knowledge and without objection on his part, to go in or near other dangerous places on the premises.

5. MASTER AND SERVANT—*Dangerous Place—Warning—Evidence of Lack of Warning.*—As it is not the duty of the master to warn his infant employees of dangers at any particular time and place, the fact that certain witnesses did not hear such warnings given, although they were in a position where they would have been likely to have heard them, if given, does not tend to prove with any degree of probability that no such warnings were given, and such evidence should not be received.

6. CONTRIBUTORY NEGLIGENCE—*Infants—Presumption.*—There is a *prima facie* presumption that an infant under fourteen years of age cannot be guilty of contributory negligence, and an instruction which ignores this presumption should be refused.

7. MASTER AND SERVANT.—*Infant Servant—Negligence of Father.*—The fact that a father permits his infant son to accept employment in a dangerous business will not defeat his right of recovery against the master for the death of the son occasioned by the negligence of the master, or his servants.

8. Evidence—*Negligence—Particular Acts or Omissions.*—While the plaintiff must introduce evidence from which the jury may properly infer that an injury was caused by the defendant's negligence, he is not required to point out the particular act or omission which caused the injury.

9. Instructions—*Evidence to Support.*—Where there is direct evidence tending to show defendant's negligence, and circumstantial evidence tending to show that such negligence was the proximate cause of the injury complained of, it is not error to instruct the jury to find for the plaintiff if they believe as facts what such evidence tends to prove.

10. Master and Servant—*Duty of Master—Ordinary Care—Infant Servant.*—Ordinary care, under all the facts and circumstances of the case, is the measure of a master's duty to his servants in the case of infants as well as in case of adults, though what is ordinary care will vary under different circumstances, one of which is the infancy of the servant.

Error to a judgment of the Circuit Court of Wythe county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

The instructions 2, 4, 10 and 13 given on behalf of the defendant after being modified as pointed out in the opinion of the court were as follows:

2.

"The court instructs the jury that to entitle the plaintiff to recover he must prove his case as it is alleged in his declaration, that he cannot allege one state of facts and recover upon other and different facts than those charged. As to ·what facts are proven the jury are the judges."

4.

"The court instructs the jury that where an employee is confronted with two methods of performing his work, the one safe and the other dangerous, where the employee has sufficient intelligence and capacity to distinguish between the safe and unsafe method he owes a positive duty to pursue the safe method

irrespective, of the degree of danger which may be involved in the unsafe method, and any departure from the path of safety will prevent his recovery in event he is injured.    And if the jury shall believe from the evidence in this case that Vivian P. Tomlinson was ordered to start the washer and was not instructed how to start it and he was at the time of his injury in the act of starting it, and that he had sufficient intelligence and capacity to understand that it was safer to start the washer by pulling the belt from underneath than to stand upon the top of the belt, and if they shall believe that he was standing thereon, and that he could have performed the work in perfect safety by pulling the belt from underneath, and that he, knowing this was the safe method, adopted the more dangerous method contended for by the plaintiff, then the said Vivian P. Tomlinson was guilty of such contributory negligence as will defeat his recovery in this action."

10.

"If the jury believe from the evidence that the place at which Vivian P. Tomlinson was assigned to work at the chute was a safe place, and that his work and duties did not require him to come in close proximity to the cog wheels on which he was injured, and that the defendant had no reason to expect that the said Vivian P. Tomlinson by reason of his age, would leave his place and go so close to the cog wheels as to be caught therein, then no duty rested upon the defendant company to warn the said Vivian P. Tomlinson of the danger of becoming caught in the cog wheels."

13.

"If the jury shall believe from the evidence that Vivian P. Tomlinson whilst in the employment of defendant company had sufficient capacity and intelligence to know that cog wheels were dangerous and that if he came into contact with them he was likely to be caught and injured, and had sufficient capacity and intelligence to appreciate and understand that if he approached near said cog wheels he was liable to get caught and

that the cogs in which he was caught were open and obvious, then no duty devolved upon defendant company to instruct him of the danger of said cog wheels and his liability to be caught and injured by them if he approached too near."

*Fulton & Fulton* and *P. H. C. Cabell,* for the plaintiff in error.

*A. A. Campbell* and *Robert Sayers,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Vivian P. Tomlinson, an infant aged eleven years and six months, lost his life whilst in the service of the Virginia Iron, Coal & Coke Company, and this action was instituted by his personal representative (his father) to recover damages on the ground that his decedent's death was caused by the negligence of the defendant company.

Upon a trial of the cause there was a verdict and judgment against the defendant company, and to that judgment this writ of error was awarded.

It appears that the defendant company was the owner and operator of machinery called a "buddle," used for the purpose of separating iron ore from the dirt and other impurities found with it  The buddle is located on the side of a hill, and is a structure in which there are three stories, or levels.  The ore is brought on small cars from the mine to the upper story, or level, of the buddle, where it is dumped into washers.  The washers consist of logs with paddles attached, encased in closed boxes into which water flows.  The logs are made to revolve by means of a gearing consisting of pinions, cog-wheels, and belts driven by a steam engine.  The paddles upon the revolving logs keep the ore pushed toward one end of the washer, and the mud and water pass out at the other end.

The washers are covered over, and their covering make, or aid in making, the second level of the buddle. From the washers the ore passes into a screen through which water also passes, and from the screen the ore is carried through a chute into cars underneath the first or ground level. Steps lead from one level of the buddle to another.

The plaintiff's intestate was employed, with the consent of his father, to work at the chute on the bottom floor or level, his duty being to pick mud balls and other substances from the iron ore as it passed through the chute. Near the decedent's place of work was the gearing of the sand washer, with its cog-wheels, pinions, pulleys and belt, but not sufficiently close to endanger his safety whilst engaged in the work he was employed to do. He had been at work at this place for about six weeks prior to his death, which occurred on the 10th day of December, 1903, a few days before the wise and humane statute went into effect which makes it a misdemeanor to employ children under twelve years of age in such work. Va. Code, 1904, sec. 3657bb.

On that day, a few minutes before the buddle was stopped for the employees to get their dinner, he was found crushed to death between the cog-wheels (one of which is thirty-four inches in diameter) of the sand washer. There is no direct evidence as to the manner in which he came in contact with the cog-wheels and lost his life.

One of the theories of the plaintiff as to the manner in which the accident occurred, and the one principally insisted upon, is that the belt on the sand washer was slipping, as it sometimes did, and that the decedent, who had been directed by the foreman of the buddle to start the belt when it stopped, was attempting to start it by catching hold of the sill to which the roof was fastened, swinging over and tramping upon the belt with his feet, and that while engaged in this effort to start the belt he fell or was thrown between the cogs below and very near where he was killed, and that such mode of starting the belt was not only dangerous but beyond the scope of the decedent's duty, and that the decedent was not warned of the danger.

To show that such a method of starting the belt was dangerous, several witnesses were permitted to give opinion evidence to that effect over the defendant company's objection. This action of the court is assigned as error.

The facts disclosed by the record show that such a mode of starting the belt, especially by a child eleven and a half years of age, was manifestly dangerous; at least the facts were of such character that jurors and men of ordinary intelligence generally would be just as competent to form an opinion and determine whether or not that mode of starting the belt was dangerous, as the witnesses. This being so, opinion or expert evidence was not admissible. Such evidence, as a rule, is not admissible where the facts already before the jury or which may be sufficiently brought before it, furnish all the materials necessary ·for its judgment. *Southern Ry. Co.* v. *Mauzy,* 98 Va. 692, 37 S. E. 285 ; 1 Wigmore on Ev., sec. 557. But while the evidence under consideration was not admissible, it was harmless error. *Lane Bros.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857.

The trial court, over the defendant company's objection, permitted the plaintiff to testify, that when the buddle is overloaded and the belt is properly laced, the belt will not stop, but the overloading will either break the belt or some other part of the machinery. One objection made to this evidence was that it was not shown that the witness was an expert.

The qualification of a witness to testify as an expert being largely in the discretion of the trial court, its admission of such testimony will not be reviewed, unless it clearly appears (as it does not in this case) that the witness was not qualified. *Lane Bros.* v. *Bauserman, supra; Richmond Locomotive Wks.* v. *Ford,* 94 Va. 627, 27 S. E. 509.

The other objection was that even if the witness were an expert the questions asked called for his opinion upon a hypothetical condition of facts which were not proved in the case

There was evidence tending to prove the facts hypothetically stated, and the questions were not, therefore, objectionable on that ground.

The court permitted the plaintiff to prove that boys working about the puddle rode back and forth on the cars upon which the ore was hauled from the mine, with the knowledge of, and without objection by, the defendant company.    This evidence was objected to by the defendant company, because even if riding on the cars was dangerous, and it were negligent in permitting it, there was no such charge of negligence in the declaration, and the evidence did not in the remotest degree have any connection with the decedent's death.    The object of this evidence was to show that the defendant company had failed to instruct such children as to the dangers attending their employment, and general permission and custom for them to go into dangerous places about its works.

Evidence that children were permitted by the defendant company to go, or that they went with its knowledge and without objection, into or about the place where the deceased lost his life, was in our opinion admissible; but evidence that it had permitted other children to ride upon its cars which brought ore from the mine, or to go in or near other dangerous places upon the top of the buddle, in order to establish the negligence charged in the declaration was not admissible.    Wharton on Ev., sec. 40.

Employees of the defendant company were permitted to testify that they had never heard the foreman, Vaughan, or any other boss of the defendant company, give any instruction to boys working where decedent worked as to the dangers of the machinery where he was killed, and that they were in a position where they would have been likely to have heard any such instruction, if given.    This action of the court is assigned as error.

While it was the duty of the defendant company to instruct the decedent and the boys working with him as to the dangers of the machinery by which they were surrounded, yet such instructions were not required to be given at any particular time and place.    That being the case, the fact that the witnesses whose

evidence is under consideration did not hear such instructions given does not tend to prove with any degree of probability that no such instructions were given   The evidence was therefore inadmissible.

The defendant company asked for twenty instructions.   Of these the court gave fourteen as offered, modified instructions numbered 2, 4, 10 and 13 and gave them as amended, and refused to give instructions Nos. 15 and 20.   The action of the court in modifying and refusing the instructions mentioned is assigned as error.

· We do not think that the court erred in making the additions it did to instructions numbered 2, 4, 10 and 13; nor did it err to the prejudice of the defendant company in giving them as amended.

Instruction No. 15 told the jury that if they believed from the evidence that the plaintiff's intestate, without any requirement from the defendant company, left the place at which he was assigned to work, and went in such close proximity to the cog-wheels, either for the purpose of getting grease from the post or cogs, or for any other purpose unconnected with the performance of his duty, then the defendant company was not responsible for the decedent's act in voluntarily exposing himself to such danger, and the jury should find for the defendant.

This instruction states a correct proposition of law as applied to an adult, but without qualification is an erroneous statement of the law as applied to an infant under fourteen years of age, as to whom there is a *prima facie* presumption that he can not be guilty of contributory negligence.   *Lynchburg, &c. Mills* v. *Stanley,* 102 Va. 590, 46 S. E. 908.   See 1 Shear. & Red. on Neg., sec. 73a; 1 Labatt on Neg., sec. 348.   The court, therefore, properly refused to give that instruction.

· Instruction No. 20 told the jury that if they believed from the evidence that the plaintiff contributed to the death of his son he could not recover.   There is no evidence tending to prove that the father in any wise proximately contributed to the death of

his son.  It is true that he consented that his son might enter the employment of the defendant company, but if that company by its negligence caused the son's death, it clearly cannot defeat the father's right to recover therefor by showing that he consented to the employment.  The court was plainly right in refusing to give that instruction.

The court gave six instructions for the plaintiff.  The giving of each of these instructions, except No. 5 is assigned as error.

The first instruction is as follows: "The court instructs the jury that it is not necessary for the plaintiff to prove the exact way in which Vivian P. Tomlinson met his death, if they believe that he was killed; but if they believe that the plaintiff has shown by evidence, either direct or by facts and circumstances, that Vivian P. Tomlinson was killed, and that his death was caused by the negligence of the Virginia Iron, Coal & Coke Company, as set forth in any of the several counts of the declaration, though they are not certain in which way he was killed, they must find for the plaintiff."

The objections made to that instruction are that it is contrary to the well established principle that the plaintiff must establish the fact that the proximate cause of the decedent's death was the negligence of the defendant, and this he must do by affirmative evidence; and that the evidence did not warrant its being given.

There is direct evidence tending to show that the defendant company was guilty of negligence in failing to properly warn the decedent of the dangers which surrounded him, and in requiring him to perform dangerous work not within the scope of his employment, and while there is no direct evidence as to the manner in which he came to his death, there is evidence tending to show that it probably resulted from one or the other acts of negligence of which the evidence tended to show the defendant company was guilty.  While the plaintiff must introduce evidence from which the jury may properly infer that the accident

was caused by the defendant's negligence, he is not required to point out the particular act or omission which caused the accident.    2 Labatt on Neg., secs. 835, 836; 1 Shear. & Red. on Neg., sec. 58.

Instruction No. 2 given for the plaintiff is as follows: "The court instructs the jury that if they believe from the evidence that Vivian P. Tomlinson was an infant under fourteen years of age, and that he was employed by the Virginia Iron, Coal & Coke Company, and was required or permitted to start the machinery by pulling or tramping the belt, and was not instructed as to his danger as set out in instruction No. —; and if they further believe that this was outside the regular duty for which he was employed, and not within the compass of his age and experience, and was an hazardous employment, involving greater danger than the work for which he was originally employed, for an infant of his age and capacity, and that he was caught by the machinery as charged, and killed in so doing, then they are instructed that said infant did not assume the risk of the same, and they must find for the plaintiff."

The objection made to this instruction is that there was no allegation in the declaration that the decedent was put to work outside of the scope of his employment, and that there was no evidence upon which to base it.

There is evidence tending to prove that the decedent was directed to start the belt when it slipped, and that one of the ways of starting it was more dangerous than the work he was employed to do.    The second count of the declaration, after setting out the dangerous character of the place where the decedent was employed to work, alleges among other things that the defendant company negligently and wrongfully employed the decedent in a dangerous place, and in a dangerous occupation for an infant under fourteen years of age, in this, that it required him to start said machinery when it stopped by starting a belt connected with the machinery, and in discharging that duty the decedent necessarily came into close and dangerous proximity

to the revolving cog-wheels which caused his death. Under the allegations of that count, we think the plaintiff had the right to show that such work was beyond the scope of the decedent's employment in order to prove the negligence charged, and to have the jury instructed upon that subject.

The plaintiff's instruction No 3, which is upon the question of contributory negligence is objected to because the evidence fails to show that the proximate cause of the decedent's death was the negligence of the defendant company.

There was, as before stated, direct evidence tending to show that the defendant company was guilty of negligence, and the circumstantial evidence tended to show that such negligence was the proximate cause of the decedent's death.

The same evidence justified the court in giving instruction No. 4 over the defendant's objection that there was no evidence upon which to base it.

The objection made to the sixth instruction is that it imposed a higher degree of care upon the defendant company for the protection of the decedent than is imposed by law. That instruction told the jury that the law required of the master the highest degree of responsibility for the care and protection of an infant employee.

The settled law of this State, by a long line of decisions, is that it is the duty of the master to exercise ordinary care for the safety of his servant in the course of his employment, but he is not bound to use any higher degree of care. See *Parlett* v. *Dunn,* 102 Va. 459, 46 S. E. 467, and the numerous cases cited.

What is ordinary care depends upon the facts and circumstances of the particular case. What would be ordinary care in one case might be gross negligence in another. The degree of care due by the master to an infant employee of tender years is much greater than is due to an adult. *Lynchburg Cotton Mills* v. *Stanley,* 102 Va. 590, 594, 46 S. E. 908. But whatever be that degree of care, it is ordinary care under all the facts and circumstances of the case. There is language in the opinion

of the court in the case last cited, which, standing alone and not considered in connection with other parts of the opinion and the authorities cited, might warrant the language used in the instruction under consideration. But that case was not intended to change the rule that ordinary care under all the facts and circumstances of the case was the measure of the master's duty to his servant in the case of infants as well as in the case of adults. This is apparent from the authorities quoted and relied on in that case for the conclusion reached.

Shear. & Red. on Neg., sec. 219, is quoted with approval in that case (page 594), in which the law is laid down as follows: "It is the duty of one who employs young persons in his service to take notice of their apparent age and ability, and to use ordinary care to protect them from the risks which they cannot properly appreciate and to which they ought not to be exposed."

Thompson on Neg., which is also cited and quoted in that case, in sec. 3767 of his work, in discussing this question, says: "but in all these and in other risks the limit of his (the master's) duty and obligation is the exercise of *reasonable or ordinary care.*"

And Bailey on Personal Injuries, who is also cited and quoted in the *Stanley Case,* declares that the measure of the master's liability to his servant is reasonable or ordinary care. Vol. 1, sections 963 to 966.

The instruction did not state the law correctly as to the measure of the master's duty to the servant, and the court erred in giving it.

It will be unnecessary to consider the remaining assignment of error, viz.: As to the refusal of the court to set aside the verdict of the jury and grant a new trial, since the judgment will have to be reversed, the verdict set aside, and a new trial granted for the errors heretofore pointed out.

*Reversed.*