# Wheatley *versus* Chrisman.

1. A proprietor of land over which a stream of water runs, has, as against a lower proprietor, the use of only so much of the stream as will not materially diminish its quantity or corrupt its quality. His right is not to be measured by the reasonable demands of his business.

2. Where the lower proprietor had a right by deed from the then upper proprietor, to erect a dam on the land of the latter, in order to convey a portion of the water through an artificial channel for the purpose of watering his meadows, but had actually used it for above twenty-five years for watering horses and cattle; it was *Held* that such use for above twenty-one years entitled him to it, and that he might maintain suit against one claiming under the former upper proprietor for polluting the stream so as to render it unfit for his cattle.

3. The claim of the plaintiff being only for compensatory damages, and not being founded on the *animus* but on the acts of the defendant, it was not material whether or not the defendant knew the extent of the injury he was committing.

Error to the Common Pleas of *Chester county*.

This was an action in case by John Chrisman *v.* Charles M. Wheatley, to December Term, 1853, for having diverted a portion of the water of a small stream from its natural channel, and also for having corrupted the water in the natural channel, part of which flowed into an artificial channel, to the injury of the plaintiff.

[Wheatley v. Chrisman.]

The stream of water, in its natural channel, flowed over the land of Chrisman, the plaintiff.   In 1791, the farm of the plaintiff, and also the farm a part of which was occupied by the defendant, belonged to Lewellyn Davis, who, on 21st February of that year, conveyed to his son, Joshua Davis, the farm of 96 acres and 86 perches, now belonging to the plaintiff, together with the privilege of digging and keeping in repair a dam and artificial watercourse leading from the stream on the upper tract belonging, at the time of the trial, to Joseph Funk, and through a part of said tract into the farm conveyed to said Joshua Davis.   The watercourse was stated in the deed to be " for the use and purpose *of watering the meadows* in the above described tract of land for the use and benefit of Joshua Davis," his heirs and assigns, for six days out of seven, when needed for that purpose; and at all other times, and when not so needed, the water was reserved for the use of the upper tract.   The artificial watercourse leads along a meadow-bank, and passes through the plaintiff's barnyard (where he was accustomed to use it to water his horses and cattle) to another meadow.

The defendant was the manager of lead-mines of the Brookdale Mining Company, whose works were on land leased from the said Joseph Funk, being a part of the upper tract of Lewellyn Davis, and also of works of the Wheatley Mining Company: and it was alleged by *the plaintiff* that impure water from the mines was pumped up into the channel of the stream so as to render it unfit for watering his cattle and for domestic purposes, and that the water was diminished in quantity.

On the trial, the deed to Joshua Davis was given in evidence on part of the *plaintiff;* and testimony was given to show that the water of the stream was diminished in 1853, and that it was caused by a portion of the stream being carried to the Wheatley Works.

On part of the defendant, evidence of a contrary character was given, and that the water from the mine was not usually unfit for the use of horses and cattle.

After the *defendant's* case was closed, *the plaintiff* offered to prove that he had enjoyed the use of the water for watering his cattle in the fields and barnyard for above twenty-one years.   It was objected that such evidence was contrary to the limitation in the deed.   The objection was overruled, and evidence was given of the plaintiff having used the water of the ditch for twenty-five years for watering his cattle.

The plaintiff also offered to prove that the water in the artificial channel was muddy, and unfit for watering cattle.   This was objected to as immaterial, but was admitted.

The defendant's counsel, in their second point, asked the Court to instruct the jury that the *defendant* was entitled to *a reasonable*

[Wheatley *v.* Chrisman.]

*use* of the water for the purpose of his business, and that if the jury believed that no more than a reasonable quantity for such purpose was used, as for the creation of steam to drive his engine, the plaintiff had no cause of complaint. The Court declined to affirm the point.

The defendant's counsel, in the third and fourth points, also asked the Court to charge that the plaintiff's right under the deed to Joshua Davis was not to be extended to admit of compensation on account of the water in the artificial watercourse being rendered unfit for watering his horses or cattle.

HAINES, President Judge, charged that the defendant, claiming under the owner of the upper tract, had the right to the use of the stream on his land for any legal purpose, provided he returned it to its channel uncorrupted and without any essential diminution; and that the size and capacity of the stream should be considered; and that any interruption of the plaintiff's rights, whether those of a riparian owner or by means of the artificial construction on his own ground, was an injury for which an action would lie, unless too trifling for the law to notice.

He further charged that though the plaintiff's claim *under the deed* was not to be extended beyond its terms, or to purposes not contemplated in it, yet that if the plaintiff showed a use by him of the water for twenty-five years for purposes not granted by the deed, or adverse to it, the plaintiff had a right to recover damages for any essential, perceptible diminution or impurity affecting such right.

January 8, 1855, verdict for plaintiff for $341 damages.

Error was assigned, first, to the admission of testimony as to the use of the water for watering cattle for above twenty-one years. Second, in admitting testimony to show that the water in the artificial channel was rendered muddy or impure. Third, to the charge, in reply to the second point, that the defendant was not entitled to the use of a reasonable quantity of the water for his business, &c.; and, fourthly, to the charge in reply to the defendant's third and fourth points.

*Lewis*, for plaintiff in error.—The purposes for which the water in the ditch was to be used were expressly limited to watering the meadows, and, the terms thus appearing, there was no ground for presuming a grant for other purposes: 20 *Pick.* 291; 2 *Metcalf,* 457; 6 *Ser. & R.* 185; 7 *Watts* 382; 8 *Cranch* 229; 9 *Dana,* 301. The use of the water for watering cattle in the barnyard, through which the water passed from one meadow to another, was not such a use as the defendant was bound to notice or prevent. Having the right to the water for irrigation, his waste or use of it for other purposes was not material to those who claimed under

the grantor, and therefore could furnish no ground for the presumption of a second grant.

As to the third and fourth points. There was no evidence that the upper proprietor ever was aware of the water of the ditch being used for watering cattle. Such knowledge, if possessed, should have been shown, as such knowledge and acquiescence is the only evidence on which a presumption of a grant could be founded: 9 *Ser. & R.* 26–33, Cooper *v.* Smith. Besides, such use was not injurious to the owner of the land above, and he could not sue therefor: 5 *M. & Welsby* 220.

As to the second point, the question is, whether the use of the water is to the injury of the other proprietors, or not: 4 *Mason* 401; 3 *Kent* 440. The use should be reasonable, so as not to render it useless to others interested, or *materially* diminish it, or affect its application by proprietors below: 3 *Caine* 307; 15 *Conn.* 366; 17 *Johns.* 306; and the extent of the use was for the jury: 6 *Barr* 32.

*Hickman* and *Pennypacker*, for defendants in error.—It was a part of the plaintiff's case, that he had used the water in the ditch for various purposes, for more than twenty-one years; and having omitted to show it at first, was permitted afterwards to prove its use for above twenty-one years. The admission of the evidence was discretionary with the Court: 4 *Harris* 305. The right to the water was claimed by user for twenty-one years and more. The terms of the deed, "for the use and purpose of watering the meadows, &c., only showed the inducement to the grant, and were not words of restriction. But the grantee was entitled to the entire beneficial use of the water. The use for twenty-one years manifested the construction by the parties.

But, independent of any right under the deed, the user for twenty-one years and more, for watering stock, gave a title by prescription to use the water for that purpose *in its natural state and ordinary purity.* It amounts to a conclusive presumption of a right: 10 *Ser. & R.* 69, Strickler *v.* Todd. It is not necessary to show *a knowledge,* by the defendant, of the use of the water in any particular way: 8 *Harris* 331, Garrett *v.* Jackson. (See also same book, p. 458–463, Reimer *v.* Stuber.)

The answer to the second point, in connexion with the whole charge, was in accordance with the decision in Miller *v.* Miller, 9 *Barr.*

The opinion of the Court was delivered May 21, 1855, by

BLACK, J.—There was no trouble in the Court below, and there can be none here, about determining what are the main and principal rights of the parties in regard to the subject-matter of the controversy. A small stream of water runs through the land

of both.   The defendant is the upper and the plaintiff the lower proprietor.   It is asserted that the defendant, who is working a lead-mine, has corrupted the water and sensibly diminished the volume of the stream.   If either of these allegations be true, the plaintiff has a right to recover in this action; and if one verdict be not enough to make the defendant discontinue the nuisance, a second jury will be instructed to give such damages as will cause him to wish that he had taken the warning of the first.   The wrong must cease, no matter how trifling it may seem.   The right of the plaintiff is absolute to be restored to the full enjoyment of his own property, and is not dependent in any manner upon its value either to himself or his adversary.

We are quite content with the exposition which the judge of the Common Pleas gave of the law which governs the owners of lands through which a stream of water passes.   His definition of their rights and obligations is accurate as well as clear.   There is indeed no complaint of anything he said on this branch of the case, except his refusal to affirm without qualification one of the defendant's points; and if there be a part of the charge better entitled to our approbation than any other, it is the answer to that point.   The proposition of the defendant was, that he had a legal right to use a *reasonable* quantity of the water for the purposes of his business.   The Court replied that his business might reasonably require more than he could take consistently with the rights of the plaintiff.   We cannot see how or on what principle the correctness of this can be impugned.   The necessities of one man's business cannot be the standard of another's rights in a thing which belongs to both.   The true rule was given to the jury.   The defendant had a right to such use as he could make of the water without materially diminishing it in quantity or corrupting it in quality.   If he needed more, he was bound to buy it.   However laudable his enterprise may be, he cannot carry it on at the expense of his neighbor.   One who desires to work a lead-mine may require land and money as well as water, but he cannot have either unless he first makes it his own.

For upwards of twenty-five years the plaintiff, and those under whom he claims, have maintained a dam across the stream above his own line and on the land occupied by the defendant.   By means of this dam a portion of the water is diverted into a ditch, and is led along a higher part of the plaintiff's farm than that through which it flows in the natural channel.   It is thus carried to the plaintiff's barnyard, whence it is suffered to return again to the channel.   Ever since the erection of the dam the owners of the plaintiff's farm have used the water running in and from the ditch for the watering of cattle as well as for the irrigation of the meadows.   Evidence was offered and admitted to show that the water was rendered so impure by the defendant's works that

[Wheatley v. Chrisman.]

it was unfit for beasts to drink. This was introduced solely to swell the damages: for the plaintiff could sustain his action and compel an abatement of the nuisance without any reference to the dam or the ditch, or the use he made or might make of the water so diverted, provided it be true that the water in the natural channel was corrupted or diminished; and if it was not so corrupted or diminished, he could not recover at all. But the fact that the plaintiff was using and had a right to use it in this particular way for a purpose important to himself does entitle him to larger damages than he would be able to get by merely proving that his legal right as a proprietor had been violated without causing him any special loss or injury. The admission of this evidence therefore must have had some influence on the verdict, though its exclusion could not have defeated the action.

Every one will admit that a person, through whose land a stream runs, may conduct it by an artificial channel to any part of his farm where he thinks it will be best for him to have it. He may use the part so diverted for the same purposes and to the same extent that he could use it if it flowed there through a natural channel, and may recover the same damages for any loss occasioned by the interference of another with his use of it. Neither is it contended that the fact of the dam, by which the water is diverted, being in this case above the plaintiff's line and on land not his own, makes any difference, if the dam be a lawful structure, which he has a right to maintain. The plaintiff's right to maintain this dam is not disputed; and if it were, his actual maintenance of it for upwards of twenty-one years would settle it at once. The evidence that he has during all that time turned the water out of its natural channel at a point above his own line and by means of an artificial channel carried it to his buildings, and there used it for watering his cattle, does make out a *primâ facie* case for any damages he may have suffered in consequence of the water being so corrupted that he could no longer use it in that way.

But there is another fact in the case which the defendant's counsel insist is totally destructive of the plaintiff's right to recover for this specific injury. It is this: the dam was originally built in pursuance of an express grant by deed from the upper proprietor to the owner of the lower farm. This deed gives the right to divert the water for the use and purpose of watering the meadows of the grantee. The argument is that the plaintiff could rightfully make no use of the water other than what the deed mentions, namely, the irrigation of meadows; that a different use of it, no matter how long continued, could raise no presumption of any other right than that which the deed gives, and that therefore when the water was so corrupted that the plaintiff's stock could not drink it, he was disturbed, not in the enjoyment of a

right, but in the perpetration of a wrong. If these propositions be sound, the judgment ought to be reversed. The principal stress of the argument before us by the counsel of either side was on the question whether a person to whom an easement like this has been granted by deed for a specified purpose, may use it twenty-one years for a different purpose, and then claim a right by prescription to the whole extent of his user. It does not appear that the point has ever been decided. We must ascertain the true rule as well as we can by the analogies of the law, and by a reference to original principles.

One who is in possession of land is deemed to be there by virtue of his title, if he has one. Upon this principle, a tenant for years, or for life, or for any other particular estate, cannot claim the fee and hold the land under the statute of limitations, after twenty-one years. Neither can a trustee or mortgagee, in possession, be permitted to set up an absolute title in himself. The quantum of interest, the duration or character of the estate which a person has in lands or tenements over which he is exercising actual dominion, must always be ascertained from the deed, record, or contract, if there be any, under which he has a right to hold it. Of lands which are unimproved, the constructive possession will also be confined to that part which is covered by the title. But where a man has a good title for one acre, and he goes into actual possession of that and also of another acre adjoining, there is no rule of law which forbids him to hold both after a lapse of twenty-one years. The last case, we think, is most analogous to the matter before us. When an easement is granted for one purpose, and the grantee exercises the right mentioned in the deed, and another right also, he is not less secure against all interruptions of either than he would have been if no express grant at all had been shown. It is as easy to presume another grant for watering horses, superadded to that for watering meadows, as it would have been, in the absence of any deed, to presume that there was a grant for both together. If one man has a right of way over another's field, which he has exercised without interruption for twenty-one years, it will scarcely be contended that his right could be destroyed by showing that he had a deed for a similar right of way over a different field. It is almost equally clear, that if I grant a right to pass over my land on foot, and the grantee, instead of confining himself to that mode of passage, goes over it continually, for twenty-one years, with wagons and horses, a grant for the latter purpose ought to be presumed in addition to that of the footway.

It is contended that, because the proprietor of the land above could not prevent the watering of cattle at the ditch; because it was not injurious to him; because he could not sue for such a use of the water, no presumption against him can arise from his omis-

[Wheatley v. Chrisman.]

sions to stop it. This argument proves too much. If it be true, it shows that the right to water stock out of the ditch was inseparable from the right to have the ditch there for the other purpose. Perhaps this is the best solution of the whole difficulty, and the truest view that can be taken of the subject. If the water cannot be used for irrigation, without rendering it liable to be innocently and rightfully used for watering cattle also, then the express grant of the former privilege implies a grant of the latter.

We are quite clear that the plaintiff had a right to the water of the stream in its natural condition, the part that flowed in the ditch no less than the other; that the pollution or material diminution of it was a wrong, and that the Court and jury were right in giving damages for every injury which was the direct, immediate, and necessary consequence of that wrong.

The claim of the plaintiff being only for compensatory damages, and not being founded on the *animus*, but on the acts of the other party, it can be a matter of no consequence whether or not the defendant knew the extent of the injury he was committing.

Judgment affirmed.