# Richmond.

PULASKI ANTHRACITE COAL CO. v. GIBBONEY SAND BAR CO.

November 18, 1909.

Absent, Buchanan, J.

1. APPEAL AND ERROR—*Conflicting Instructions—Harmless Error.*—The doctrine of harmless error is seldom, if ever, applied to conflicting ,instructions on a material point, as the court cannot tell whether the jury were guided by the correct or the incorrect instructions.

2. NEGLIGENCE—*Independent Acts of Several—Apportionment of Damages—Joint Tort Feasors.*—Where there is neither community of interest, concert of action, common purpose or design, nor joint, concurrent negligence, but several concurring negligent causes, the effects of which are separable, due to independent authors, neither being sufficient to produce the entire loss, each of the several parties concerned is liable only for the injuries due to his negligence; and the fact that it is difficult to measure accurately the damage caused by each contributor to the aggregate result does not affect the rule, or make any one liable for the acts of others. In such case there is no joint wrong, and hence there can be no joint action, nor in a single action can all the damage be assessed upon one tort feasor.

3. NUISANCE—*Independent Acts of Several—Several Liability—Mining Operations.*—If several mining companies, acting independently, cast their refuse into a stream thereby causing injury to a lower riparian owner, each is liable only for the damage done by its acts, and not for the result of the acts of others.

Error to a judgment of the Circuit Court of Pulaski county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Phlegar & Powell* and *Longley & Jordan,* for the plaintiff in error.

*W. B. Kegley* and *John S. Draper,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The defendant in error brought this action against plaintiff in error, and recovered a verdict and judgment for $1,000 damages, alleged to have been sustained by the plaintiff by reason of the deposit of slack, slate, culm and mine refuse in and along the banks of New river from the defendant's coal mine, which slack, etc., it is alleged, was carried down the river and thrown upon the sand bar of the plaintiff, situated on the east side of New river three and one-half miles below the mine of the defendant.

The declaration claimed that the plaintiff owned the said sand bar; that it contained a large quantity of valuable marketable sand and gravel; that prior to and until January 26, 1906, it was selling therefrom large quantities of the sand and gravel, for which it was deriving a certain profit per cubic yard; and that the defendant, owning and operating its coal mine some three and one-half miles above said sand bar, had placed, prior to January, 1906, a large quantity of slack, slate, culm and mine refuse in the river and along its bank, so that the same was carried down the river, some by the ordinary tides, and more by high water, and thrown upon said sand bar, and became mixed with the sand and gravel thereon, so as to render the sand worthless, etc.

At the trial of the cause, upon the issue joined on the plea of not guilty, it was developed that the land of which the sand bar was a part was conveyed to William Gibboney by a deed dated the 21st day of September, 1905, in consideration of $4,000, which was furnished him by one Frank Bell and others, who afterwards formed the plaintiff company, incorporated; that William Gibboney at once began shipping sand in his own name,

but at the expense and for the benefit of the plaintiff corporation, and continued to do so until January 27, 1906, when he conveyed the land, including the sand bar, to this corporation, chartered the 4th day of January, 1906; that after such conveyance the business of selling and shipping sand and gravel for commercial purposes was carried on in the corporation's name, William Gibboney being in charge, and all the accounts of the transactions theretofore had by William Gibboney acting for the prospective corporation, were carried over to the accounts of the latter; that in January, 1906, and repeatedly thereafter, there were floods in New river which covered the sand bar, and each flood left more coal and other injurious properties in the sand than had previously been there; that the conformation of the river bed was such as tended to carry heavy matter from the western to the eastern side of the river; that the defendant and its predecessor in title to the coal mines now owned by it had placed considerable quantities of culm, slack and mine refuse along and in the river, much of which had been carried away by high water; that coal mines have been operated for many years, one almost directly opposite defendant's mine and but a few hundred feet from the river bank, and many others on Tom's creek and Strouble's creek and their tributaries, on the east side of the river, and on Back creek on the west side of the river, all emptying into New river above defendant's mine; that the culm, slack and mine refuse from these mines was placed or washed into said streams and down them into New river; and that in 1904 the Virginia Anthracite Coal Co. took charge of some mines on Strouble's creek and had opened and continued the largest mining operations of the twenty-five in all, including the defendant's mine, in that section, and that much of its culm, slack and mine refuse had gone into the creek and been washed down into New river.

There were several exceptions to rulings at the trial on the introduction of evidence, but they are not relied on here, and only two questions are presented for decision, viz.: first, whether

or not the plaintiff could recover in this action for damages done to the sand bar prior to the time it acquired the legal title thereto; and, second, whether, if the defendant's coal and other refuse from its mine and that of the other coal mines each contributed to the injury the plaintiff sues for, the defendant is liable only for such portion of the damage as its coal and other mine refuse did to the sand bar, or for all the damage done by the deposit in and upon the sand bar of coal and other refuse from all the mines which may have contributed to the injury.

With respect to the first question, we deem it only necessary to say that the evidence tended to prove that the damage to the sand bar prior to the acquisition of the legal title by the plaintiff was but a very small part of the injury complained of, and that whatever substantial injury the plaintiff sustained was done after it acquired the legal title to the said bar. Therefore the defendant was but slightly, if at all, prejudiced by the rulings of the court on the introduction of evidence as to damages to the sand bar prior to that date.

It is very clear that the trial court, in instructing the jury, proceeded upon the theory that the defendant was a joint tort feasor with others who, as the evidence tended to show, contributed to the pollution and injury of the plaintiff's sand bar, and was responsible for the entire damage. Not only so, but contradictory instructions to the jury were given as to the defendant's liability to the plaintiff upon the facts which the evidence tended to establish, and which we have already stated.

Instruction No. 1, given for the plaintiff, told the jury that the defendant was liable for the whole damage done, if it *"materially contributed"* to the injury of the sand bar, although others also contributed; while, by plaintiff's instruction Nos. 4 and 5, the jury were told that the defendant was liable only for such proportion of the damage as was done by its refuse; and defendant's instruction No. 3, telling the jury that "the defendant is not liable for any damage which may have been done the plaintiff's sand bar from other mines than those ope-

rated by it, and if the evidence shows that the sand bar was injured by matter from defendant's mines and other mines, the defendant is not liable for any more of the damage than the evidence shows was done by the matter from its mines," was refused.

The learned counsel for the plaintiff concede that plaintiff's instructions Nos. 4 and 5 are in conflict with its instruction No. 1, but it is insisted that instruction No. 1 is a correct instruction, and therefore the defendant could not have been and was not prejudiced by the contradiction in the instructions; this contention being based upon the theory that the record shows that if the jury were misled by the contradictory instructions they were misled to the prejudice of the plaintiff and not of the defendant, as evidenced by the amount of damages awarded the plaintiff.

In this view we cannot concur. The doctrine of harmless error is seldom, if ever, applied to conflicting instructions on a material point, for the all-sufficient reason that the court cannot say whether the jury were guided by the correct or the incorrect instructions. *Va. & N. C. W. Co.* v. *Chalkley,* 92 Va. 62, 34 S. E. 976; *N. & W. Ry. Co.* v. *Mann,* 99 Va. 180, 37 S. E. 849; *Richmond Pass. & Power Co.* v. *Steger,* 101 Va. 319, 43 S. E. 612; *Amer. Tobacco Co.* v. *Polisco,* 104 Va. 781, 52 S. E. 563; *Southern Ry. Co.* v. *Hansbrough,* 107 Va. 733, 60 S. E. 58; and *Norfolk Ry. & L. Co.* v. *Higgins,* 108 Va. 324, 61 S. E. 766.

Moreover, we are of opinion that plaintiff's instruction No. 1 is an incorrect statement of the law of this case. No one can be required to answer in damages for the wrong of another, with whom he was not in privity or concert, and whose action he could not control. This case comes within the purview of the line of authorities dealing with pollution of streams, the pollution causing damage to health or property, and though there is seeming lack of harmony in the authorities, the unmistakable weight thereof is that where there are several concurrent negligent causes, the effects of which are separable, due to

independent authors, neither being sufficient to produce the entire loss, then each of the several parties concerned is liable only for the injuries due to his negligence.

These principles are stated and the distinctions drawn in 21 Am. & Eng. Ency. L., pp. 496-7, 719, citing a number of decided cases. On the last-named page, where the liability of a person contributing to a nuisance along with others is dealt with, it is said: "But if he acts independently, and not in concert with others, he is liable for damages which result from his own act only. And the fact that it is difficult to measure accurately the damage which was caused by the wrongful act of each contributor to the aggregate result does not affect the rule."

The doctrine is lucidly discussed in the well-considered case of *Swain* v. *Tenn. Copper Co.,* 111 Tenn. 430, 78 S. W. 93, and the authorities reviewed at length; the result being that the doctrine we are contending for is unqualifiedly sanctioned. Among the cases there cited is *Dyer* v. *Hutchins,* 87 Tenn. 198, 10 S. W. 194, where the plaintiff sued the several owners of a number of dogs which united in worrying and killing his sheep, to hold them liable for the damage done his property, but it was held that each defendant was liable only for the injury done by his dog, and that a joint action could not be maintained, although it was impossible to tell the damage done by any particular dog.

The rule of law is stated in Jaggard on Torts, p. 797, as follows: "But the liability of joint contributors is not necessarily that of joint tort feasors. If persons who maintain a nuisance act independently, and not in concert with others, each is liable for damages which result from his individual conduct only. And the fact that it may be difficult to actually measure the damages caused by the wrongful act of each contributor to the aggregate result does not affect the rule, or make any one liable for the acts of others." See also Gould on Waters, sec. 222; 14 Ency. Pl. & Pr., 1108; *Chipman* v. *Palmer,* 77 N. Y., 52, 33 Am. Rep. 566; *Little Scuylkill, &c., Co.* v. *Richards,*

57 Pa., 142, 98 Am. Dec., 209; *Missouri* v. *Illinois,* 200 U. S., 496, 50 L. Ed: 572, 26 Sup. Ct. 268.

The case of *Little Schuylkill, &c., Co.* v. *Richards, supra,* is directly in point, being an action brought against one of the parties contributing to a nuisance in filling up a milldam, resulting from throwing coal dirt into the river above it, by a number of parties acting independently of each other, to hold one of them liable for the entire injury. Held, that the defendant was liable for damages which resulted from his individual conduct only; and in conclusion the opinion says that to maintain the contrary doctrine "would be simply to say, because the plaintiff fails to prove the injury one man does him, he may recover from that one all the injury that others do."

In *Swain* v. *Tenn. Copper Co., supra,* in speaking of the cases holding a contrary rule to that laid down in the principal case, the opinion says, "that there was in those cases either community of interest, concert of action, or common purpose or design, or joint, concurrent negligence, in some form, which made the defendants joint tort feasors, and that where carefully examined they are not really in conflict with the doctrine here announced."

In the view that we take of this case it becomes unnecessary to discuss other questions presented.

The judgment of the circuit court must be reversed and annulled, and the cause remanded to that court for a new trial to be had in accordance with the views expressed in this opinion.

*Reversed.*