Syllabus.

## Richmond.

Arminius Chemical Co. and Another v. Landrum and Others.

January 18, 1912.

Absent, Whittle, J.

1. Pleading and Practice—*Action of Tort—Temporary Damages—Verdict in Conflict with Pleadings.*—In an action on the case to recover damages for a nuisance, the plaintiff claimed damages only up to the commencement of the action. The defendants pleaded not guilty and a special, plea, No. 1, that the nuisance, if any, is permanent in its character, and that entire damages must be recovered in one action, and that no action lies for temporary damages, and plea No. 2, that the plaintiff's claim is barred by the act of limitations. Issue was joined on each of these pleas, and the jury found a verdict for the plaintiff, "on the issues joined on the special pleas Nos. 1 and 2," against two of the defendants, and assessed his damages at $800, and in favor of the other defendants.

   *Held:* The effect of the finding of the jury is that the two defendants against whom the verdict was found were guilty of the trespass alleged in the declaration, and that the averments of the special pleas were untrue, and hence judgment should be entered for the plaintiff against said two defendants for the damages assessed by the jury in their verdict.

2. Nuisance—*Damages—General Benefits—Set-Off.*—General benefits resulting to all lands in the neighborhood from the establishment and operation of a mining or manufacturing plant cannot be set up to mitigate the damages sustained by a land owner by reason of the improper manner in which the plant is operated. Such benefits are mere incidents arising out of the existence of the plant, and give the owner of the plant no claim against the land owner.

3. Pleading—*General Issue—Matter Provable Under—Special Pleas.*—Under the plea of not guilty in an action of trespass on the case in tort, the defendant may give in evidence any matter which justifies or excuses the act or acts complained of in the declaration. Hence it is not error to reject a special plea setting up such matter. In the case at bar, the grounds of defense stated the matter set up by the special plea, and it was shown under the general issue.

4. WATERS AND WATER COURSES—*Use of Stream—Pollution of Water.*—
The general principle of law is that all riparian proprietors on the
same stream have the same right to the use and enjoyment of its waters,
but this use is qualified by the right of the others to have the same
substantially preserved in its size, flow, and purity, and to be pro-
tected against any material pollution of its waters. The use of one
must not, therefore, be inconsistent with the rights of the others.

5. WATERS AND WATER COURSES—*Pollution of Stream by Mine Owner—
Necessary Use of Stream—Rights of Lower Proprietor.*—A mine owner
cannot pollute a stream to the prejudice of a lower riparian proprietor,
although the pollution be the necessary consequence of the only method
in which he can operate his mine. The necessities of one man's
business cannot be the standard by which to measure another's
rights in a thing which belongs to both. The private business of
one man or class of men, however important its successful operation
may be to the public or to the development of the country, cannot
give such person or class of persons the right to destroy or materially
injure the property of another in a thing in which they have common
rights.

6. NUISANCE—*Pollution of Stream—Damages—Duty of Plaintiff to Mitigate.*—
In an action to recover damages resulting from carting the refuse and
washings from a mine into a stream, whether or not it was the duty
of the plaintiff to mitigate his damages by removing trees which had
fallen into the stream, where the evidence does not show negligence
*per se* on his part, is a question for the jury, under proper instructions
from the court.

7. APPEAL AND ERROR—*Experts—Qualifications—Discretion of Trial Court.*—
Although a witness may not have been very highly qualified to testify
as an expert, yet if the trial court has permitted him to testify, this
court will not, on that account, reverse its judgment, unless it clearly
appears that he was not a competent witness.

8. APPEAL AND ERROR—*Instructions—Exceptions—Waiver—Separate Acts
of Negligence by Several—Inseparable Damage.*—A party will not be
heard to question for the first time in an appellate court the correct-
ness of an instruction to which he made no objection in the trial court.
*Quare:* Where separate and independent acts of negligence of two
parties are the direct cause of a single injury to a third person, and it is
impossible to determine in what proportion each contributed to the
injury, is each responsible for the whole injury?

9. APPEAL AND ERROR—*Evidence to Support Verdict.*—While this court
has the right to pass upon the sufficiency of the evidence given in the
trial court, it will not reverse the judgment of the trial court and grant
a new trial because the verdict is contrary to the evidence, or without
evidence to support it, except in a case of plain deviation from or
palpable insufficiency of the evidence, and not in a doubtful case, merely
because the court, if on the jury, would have given a different verdict.

Error to a judgment of the Circuit Court of Louisa county in an action of trespass on the case. Judgment for the plaintiffs against two of the defendants, who assign error.

*Affirmed.*

The op'nion states the case.

*F. W. Sims, Gordon & Gordon,* and *James R. Caton,* for the plaintiffs in error.

*W. C. Bibb* and *Harmon & Walsh,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action of trespass on the case brought by the defendants in error against the plaintiffs in error and two other corporations to recover damages for the pollution of the waters of Contrary creek, which flows through the lands of the plaintiffs, and for injuries to their lands caused by the deposit thereon of the washings of "iron pyrites" taken from the mines of the defendants.

Upon the trial of the cause the following verdict was found and judgment entered—viz.: "We, the jury, find for the plaintiffs, on the issues joined on the special pleas Nos. 1 and 2, against The Sulphur Mining and Railroad Co. and the Arminius Chemical Co., and fix the damages at the sum of eight hundred dollars, and we further find for the defendants *to* the United States Fidelity and Guaranty Co. and the Virginia-Carolina Chemical Co.—F. P. SMITH, Foreman."

"And thereupon the defendants, the Sulphur Mining and Railroad Co. and the Arminius Chemical Co. moved the court in arrest of judgment, to set aside the verdict of the jury, and for a new trial, because the verdict is contrary to the law and the evidence, the damages assessed are excessive and unsupported by the evidence, and for misdirection of the jury; which motion the court overruled, to which ruling of the court the said defendants excepted. Whereupon it is considered by the court that the plaintiffs recover of the said defendants *to* the Sulphur Mining and Railroad Co. and the Arminius Chemical Co. the sum of eight

hundred dollars, with legal interest thereon from this day until paid, and their costs in this behalf expended."

To that judgment, upon the petition of the Arminius Chemical Company and the Sulphur Mining and Railroad Company, this writ of error was awarded.

The first assignment of error, made alone by the Arminius Chemical Company, is that "there is error apparent on the face of the record, in that the verdict of the jury and the judgment of the court are in conflict with the allegation of the plaintiffs' declaration and with their replication."

The defendants pleaded the general issue and offered three special pleas, all of which were objected to, but the court overruled the objections to special pleas Nos. 1 and 2, and permitted them to be filed, and to each of these the plaintiff replied generally.

For the purposes of this assignment of error it may be conceded that the amended declaration only states a case entitling the plaintiffs to damages resulting to them from the alleged nuisance prior to the institution of the action, as claimed by the petitioner. Special plea No. 1 avers that the nuisance complained of is permanent in its character, and that all the damages resulting therefrom to the plaintiffs must be recovered in one action, and concludes with the averment "that the plaintiffs ought not to have or maintain their claim for temporary damages only in the declaration mentioned, but should sue for and recover all the damages they have suffered and will sustain, if any, by reason of the said injuries, in one action." Special plea No. 2 contains the same averments as special plea No. 1, except its conclusion. No. 1 concludes as above mentioned, and No. 2 concludes as follows: "And the said defendants say that the several supposed causes of action in the declaration mentioned did not, nor did any of them, accrue to the said plaintiffs at any time within five years next before the institution of this suit." The general replications to these pleas put the averments of each in issue.

The effect of the finding of the jury, as we understand it, is that the petitioning defendants were guilty of the trespass alleged in the declaration—that the averments of neither of the special pleas Nos. 1 and 2 were true, and that the plaintiffs were damaged to the extent of $800. The verdict of the jury was not, therefore,

in favor of the petitioners upon special plea No. 1, as it insists, but against it. The judgment of the court is in strict accordance with the verdict of the jury.

The next error assigned is to the action of the court in refusing to permit E. J. Haley and a number of other witnesses to testify, in mitigation of damages, "that all of the lands lying in the vicinity of the defendants' mines, including those of the plaintiffs, have been greatly enhanced in value as an incident of the operation of said mines; that the population in such vicinity had been increased twenty to one by reason of their operations, and, as a consequence, all lands close enough to furnish homes for the men working at the mines had risen in value since the year 1899 to a marked extent, possibly to as great an extent as the sum of the injury complained of."

It appears from the bill of exceptions taken to the action of the court, and also from the assignment of error, that the object of the evidence was not to prove any special benefit to the plaintiffs' lands by reason of the nuisance, but the general benefits which had resulted to all the lands lying in the vicinity of the mines of the defendants, including that of the plaintiffs.

Without considering the question, whether or not special benefits resulting to a land owner from the mining or manufacturing plant, operated in such manner as to become a nuisance and injure the lands of such owner, can be proved to mitigate the damages resulting from the wrongful act, it is clear, we think, that general benefits, like an increase in the market value of land, which may result or come to all the lands in the vicinity of such mining or manufacturing plant by reason of its establishment and operation, cannot be shown to mitigate the land owner's damages which result from the improper manner in which the plant is operated. These general benefits are mere incidents or accidents arising out of the existence of the mining or manufacturing plant. They give the owner of the plant no claim against the land owner. Their value cannot be treated by the plant owner as the purchase price, in whole or in part, of a right to so use or operate his plant as to injure the land owner, nor as a set-off against damages resulting from a wrongful act. See 1 Sutherland on Damages (3d ed.) secs. 158, 1056; *Frances* v. *Schoolkoff*, 53 N. Y. 152; *Marcy* v,

*Frees,* 18 Kan. 353, 355–'6; Opinion by Judge (afterwards Justice) Brewer in *Gerrish* v. *New Market, &c. Co.,* 10 Fos. 478, 485; *Jamestown, &c. Co.* v. *Turner,* 9 Leigh (36 Va.) 313, 339–'41.

The next assignment of error is to the action of the court in rejecting special plea No. 3, and in refusing to give instruction No. 9, asked for by the defendants.

The defense sought to be set up by that plea was that the injuries complained of in the plaintiffs' declaration were but the result of the natural, lawful, and reasonable use of their property by the defendants, without malice or negligence, and, this being so, they were not liable in damages for the alleged injuries.

By instruction No. 9 the court was asked to tell the jury that if they believed from the evidence that the averments of that plea were true, they must find for the defendants.

If it were conceded that the plea set up a good defense to the plaintiffs' demand, no prejudice to the defendants resulted from the rejection of the plea; for, under the plea of not guilty in an action of trespass on the case in tort, the defendant has the right to give in evidence any matter which justifies or excuses the act or acts complained of in the plaintiffs' declaration. See Stephens on Pl. 157; 4 Min. Inst. 646; 1 Chitty on Pl.; 1 Barton's Law Pr. (2d ed.) 503–'4; *Ridgeley* v. *Town of West Fairmount,* 46 W. Va. 445, 33 S. E. 233, 234.

In the statement of their grounds of defense required and filed under the plea of not guilty, the same defense was relied on by the defendants as was set up in special plea No. 3, and they were permitted to introduce evidence tending to sustain it.

It appears from the uncontradicted evidence in the case that the plaintiffs are the owners of about two hundred and fifty acres of land, through which flows Contrary creek. A portion of the tract is bottom land, subject to overflow in times of high water. The two defendants who have appealed in this case are upper riparian occupants, each in possession of a large tract of land, upon which it operates large mines producing iron pyrites, and upon which it has erected washers to separate the ore from the slate or rock in which it is embedded as it comes from the mines. The rock is crushed and then washed in water by some device which permits the valuable ore to settle and the refuse to pass off in the

water. This refuse finds its way to the creek, and in time of high
water quantities of it are deposited on the plaintiffs' land. The
refuse is in part iron pyrites. It contains, it seems, iron and sulphur,
which, upon being exposed to the air, gives off sulphuric acid. This
acid or noxious substance kills vegetation and injuriously affects
the fertility of the soil. About thirty acres of the lowland of the
plaintiffs are covered with said deposit, which has killed all, or
nearly all, of the vegetation growing upon it, including trees, and
rendered it almost, if not entirely, valueless for farming purposes.

The evidence further tends to show that the land covered by
the deposit at times becomes soft and boggy, so that it is difficult,
if not impossible, for stock to cross it from one part of the farm,
which the creek divides into about equal parts, to the other; that
the waters of the stream are unfit for use by domestic animals;
that at times they will not drink it, and that the residue of the
land has, by the acts of the defendants, been rendered much less
valuable as a farm.

Unless the said defendants had superior rights to the ordinary
riparian proprietor, it is clear that the injuries complained of were
not *damnum absque injuria*, and instruction No. 9 was properly
refused; for the general principle of law is, that all riparian pro-
prietors upon the same stream have the same right to the use and
enjoyment of its waters—the right of no one is absolute—but is
qualified by the right of the others to have the stream substantially
preserved in its size, flow, and purity, and to be protected against
any material pollution of its waters. This is the common right
of all. The use of one must not, therefore, be inconsistent with
the rights of the others. *Trevett* v. *Prison Association*, 98 Va.
332, 36 S. E. 373, 81 Am. St. Rep. 727, 50 L. R. A. 564; *Shoffner*
v. *Sutherland*, 111 Va. 298, 68 S. E. 996; Shearman & Redfield
on Neg., secs. 733, 734.

The contention of the defendants is that the general rule as to
the rights of riparian owners does not apply in the case of mine
owners, whose mines are so situated that, in their operations,
the pollution of the stream is an inseparable and necessary conse-
quence from the only use for which their property is valuable;
in other words, if the pollution of the stream was the necessary
consequence of the only method in which the said defendants

could operate their mines, then the injury done to the plaintiffs was reasonable and lawful, and *damnum absque injuria.*

The case principally relied on to sustain this contention is that of *Penn. Coal Co.* v. *Sanderson,* 113 Pa. St. 126, 6 Atl. 453, 57 Am. St. Rep. 445, in which it was held that the use and enjoyment of a stream of pure water for domestic purposes by the lower riparian owners, who had purchased their lands, built their houses, and laid out their grounds before the opening of the mine, the acidulated waters from which rendered the stream entirely useless for domestic purposes, must *ex necessitate* give way to the interests of the community, in order to permit the development of the resources of the country and to make possible the prosecution of the lawful business of mining coal. That case had been before the Supreme Court of Pennsylvania twice before, when the decision was in favor of the lower riparian owner. On the third appeal the decision relied on was made by a divided court—four judges to three. The conclusion reached on the last appeal is not in accord with principles which have for centuries applied in determining the common interests and rights of riparian proprietors, and the case has received but little approval outside of the jurisdiction in which the ruling was made. That decision, as it seems to us, is based upon two grounds, neither of which is sound—viz., that the rights of one riparian owner are to be determined by the necessities of another, and by the importance of the latter's business to the community or public.

"The necessities of one man's business cannot," as has been well said, "be the standard by which to measure another's rights in a thing which belongs to both." *Wheatley* v. *Chrisman,* 24 Pa. 298, 64 Am. Dec. 657; *Strobel* v. *Kerr Salt Co.,* 164 N. Y. 303, 58 N. E. 142, 79 Am. St. Rep. 643, 51 L. A. 687; *Beach* v. *Sterling Iron Co.,* 54 N. J. Eq. 65, 33 Atl. 286.

Neither can the private business of one man or class of men, however important its successful operation may be to the public or to the development of the country, give such person or class of persons the right to destroy or materially injure the property of another in a thing in which they have common rights. If, under our Constitution and laws, private property cannot be taken or damaged for public uses without just compensation, *a fortiori* it

cannot be done for private purposes.  See *Townsend* v. *Norfolk Ry. Co.*, 105 Va. 49, 52 S. E. 970, 115 Am. St. Rep. 842, 4 L. R. A. (N. S.) 87; *Shoffner* v. *Sutherland, supra*, 111 Va. 301, 68 S. E. 996.

In *Young* v. *Banking Distillery Co.* (1893), 1 App. Cases 691, 701–'2, Lord Shand, in commenting on the Sanderson case, after stating what it decided, said: "The case had been twice previously before the court, and on both occasions the judgment was given against the mine owners.  On the third occasion, which occurred in consequence of a third trial to assess damages, the jury found a very large sum due to the lower owner, but the verdict was quashed and the whole case reconsidered with reference to the legal rights of the parties, and with the results I have stated. In a court of seven judges there were three who dissented from the judgment, including the Chief Justice of the State.  This circumstance and the grounds of the judgment seem to me to be sufficient to deprive the case of any real weight."  After stating the grounds upon which the decision was placed, he continues: "The case has no application to the present, because the decision was based upon special circumstances as to the great relative value of the minerals as compared with the surface in the district; and because, in any view, the decision seems to me to have been making law rather than interpreting the law so as to give effect to sound, just, and well-recognized principles as to the common interest and rights of upper and lower proprietors in the running water of a stream."

In the same case (p. 699), Lord McNaughton, in commenting upon the *Sanderson case*, said: "Then the appellant urged (precisely as the defendant here) that working coal was the natural and proper use of their mineral property.  They said they could not continue to work unless they were permitted to discharge the water which accumulates in their mine.  They added that this water course is the natural and proper channel to carry off the surplus water of the district.  All that may be very true, but in this country, at any rate, it is not permissible in such case for a man to use his own property so as to injure the property of his neighbor."

In the case of *Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303, 58 N. E.

142, 79 Am. St. 643, 51 L. R. A. 687, it was held that the doctrine of the *Sanderson case* was not the law of the State of New York, and, in commenting upon it, the Court of Appeals of that State said: "We have never adopted that rule in this State, and no public necessity exists therefor, even if it would ever warrant the courts in relaxing rules for protection of property of small value in the interest of some business required to develop the resources of the State and in which much capital had embarked, giving employment to a great number of people. There is nothing about the case now before us to take it out of the general rules governing the rights of riparian owners. Those rules are well established in this State, and, so far as material to the case before us, are, in the absence of modification by grant or prescription, as follows: A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity. While he does not own the running water, he has a right to a reasonable use of it as it passes by his land. As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow, and purity, and to protection against material diversion or pollution. This is the common right of all. The use by each must, therefore, be consistent with the rights of the others, and the maxim, *sic utere tuo,* observed by all. The lower riparian owners are entitled to a fair participation in the use of the water, and their rights cannot be cut down by necessity or convenience of the defendant's business. 'The necessities of one man's business cannot be the standard of another's rights in a thing which belongs to both.' " *Wheatly* v. *Chrisman,* 24 Pa. 298, 64 Am. Dec. 657.

In *Beach, &c.* v. *Sterling Iron Co.,* 54 N. J. Eq. 286, 33 Atl. 286, the Supreme Court of New Jersey said: "Several matters are urged in defense to this case: First, but faintly, that the doctrine finally established by a bare majority of a divided court in Pennsylvania, in *Pennsylvania Coal Co.* v. *Sanderson,* 113 Pa. St. 126, 6 Atl. Rep. 453, 57 Am. Rep. 445, should be adopted here.  *  *  *  The doctrine of that case is shown  *  *  *  to be inharmonious

with a long line of previous decisions in Pennyslvania, and has not been, so far as we can learn, followed in any other State—certainly not in this State. It was repudiated in Ohio, whose mining interests are quite large, in the recent and well-considered case of *Columbus, Etc., Coal, Etc., Co.* v. *Tucker*, 48 Ohio St. 41, 26 N. E. Rep. 630, 29 Am. St. Rep. 528, 12 L. R. A. 577.   *   *   *   It was not suggested on the argument that the doctrine ever had the least foothold in this State."

In *Columbus, &c. Co.* v. *Tucker*, 48 Ohio St. 41, 26 N. E. 630, 29 Am. St. 528, 12 L. R. A. 577, in which the Supreme Court of the State of Ohio disapproved of the doctrine of the *Sanderson case*, it was said: "The further claim of the company that it had the right to make the deposits in the places complained of, because it was necessary to the successful conduct of its own business to so place them, seems to us wanting in substance. The effect is to measure the rights of the plaintiff in his lands and in the waters of Monday creek by the convenience or necessity of the company's business. An owner of land in Ohio is not subject to any such narrow and arbitrary rule."

In discussing the *Sanderson case* the Supreme Court of Alabama, in *Drake* v. *Lady Essley Coal Co.*, 102 Ala. 501, 14 South. 749, 48 Am. St. Rep. 77, 24 L. R. A. 64, after referring to some of the later decisions of the court which decided the *Sanderson case*, said: "The case in 113 Pa. is not overruled, but is commented upon, and the distinction is drawn that in the latter case (113 Pa.) the ore was being mined by the owner of the soil, and in the two later cases the coke was not mined on the land upon which it was manufactured. It seems to us that if in the case where the coal was mined on the land of the owner he was exempt from damages, upon the ground that the individual or minor interest must yield to the greater and paramount interest of the public, it would make but little difference where the coke was mined. The manufacturing of the coke from the ore was what contributed to the paramount and public interest. On the other hand, if the owner is to be exempted from liability because the ore was mined on his own land, and not because of the public benefit, then the doctrine of *'sic utere tuo ut alienum non laedas'* would be abolished, and the rights of the lower riparian proprietors, almost universally re-

3

cognized and protected, would be destroyed. * * * Under the provisions of the Constitution, private property cannot be taken for public uses or for corporations without just compensation made to the owner, except by his consent. The courts—and it was never intended to be otherwise understood—are not the 'masons' to 'chisel' away vested rights of property of private individuals, however humble and obscure the owner, for the benefit of the public or the great corporations." See also *Tennessee Coal, &c. Co.* v. *Hamilton,* 100 Ala. 252, 14 South. 167, 46 Am. St. 48.

In *Day* v. *Louisville Coal and Coke Co.,* 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167, the principles of the *Sanderson case* were invoked, and it was contended that the injury complained of was *damnum absque injuria,* because consequent upon and necessary to the transaction of the defendant company's lawful business. In reply to that contention the Court of Appeals of West Virginia said: "This case involves principles very important everywhere, but especially important in this State at present and in the future; but those principles are old, and have been called into requisition through many, many years, in actions for the pollution of streams, and casting into them hurtful things, and depositing them upon lands of riparian owners on the stream below. The defendant contends that, as it was using its property in carrying on a lawful business, very useful to the public, it is exempt from liability, as it was only exercising its rights. We are told by the able brief of the defendant's counsel that the affirmance of this judgment will be vastly hurtful and disastrous to the mining and coke interests of West Virginia, and have a tendency to detract from the value of our land, and hinder the development of the great wealth of coal and iron in the bowels of our mountains, and will be subversive of great public policy, which demands the development of our wealth therein and tends to the weal of the whole people of the State; and that a few individuals injured thereby must be without redress. We cannot accede to this broad proposition. The established maxim of centuries is *sic utere tuo ut alienum non laedas* (so use your own property that you do not injure another). That rule is almost equal to the Golden Rule in importance, and must never be lost sight of in the daily doings and transactions of organized society. A man has land upon a stream. No one

is its sole lord.   No one has a right to injure that land.   It is
protected by the Constitution.   If one up the stream, in his works,
be they ever so lawful, honorable, and necessary for private weal
or public weal, do thereby injure the land of that owner further
down, by unlawful invasion of it, by casting upon it things damag-
ing it, or by polluting the purity of the water, rendering it unfit
for the owner's consumption as it passes through his land, the man
up the stream must answer in damages.   One man, without fault,
is injured by another.   That is enough for liability.   This is the
general principle of the common law.   One man cannot thus in-
jure another.   Especially is this so in this State, where the Con-
stitution says that private property shall not be damaged for
public use without compensation.   How, then, can it be damaged
for private interests or to promote a supposed public policy?   The
authorities are ample on this subject to sustain this position."

In the case of *Bowling Coal Co.* v. *Ruffner*, 117 Tenn. 180, 100
S. W. 116, 9 L. R. A. (N. S.) 923, the Supreme Court of the
State of Tennessee, in refusing to follow the *Sanderson case*,
said: "We are of opinion that the doctrine announced in *Penn-
sylvania Coal Co.* v. *Sanderson, supra,* is opposed by the great
weight of authority in this country and England, and is, in our
judgment, subversive of fundamental private rights, while it dis-
cards  *  *  *  the honored principles of the common law em-
bodied in the maxim, *sic utere tuo ut alienum non laedas.*"

In a note to this case, in 10 Am. & Eng. Ann. Cases, p. 587, where
it is also reported, many cases, English and American, are cited
sustaining the general rule that where an upper riparian owner
pollutes a stream by mining operations, rendering the water unfit
for domestic, manufacturing, or agricultural purposes, or causing
refuse to be deposited on the lower riparian owner's lands, material-
ly injuring the same, he is responsible in damages.

We are of opinion that instruction No. 9 did not correctly state
the law as applied to the facts of this case, and the court did not
err in refusing to give it.

The next assignment of error is to the action of the court in
refusing to give the defendants' instruction No. 7, and in giving
in lieu thereof the following instruction:

"The court instructs the jury that it is the duty of a person

injured by the wrongful act of another to take such reasonable precautions to prevent increase of injury as would be taken by a reasonable man under the circumstances; and if the jury believe from the evidence that the plaintiff failed to take such precautions and that the injury which the jury may believe from the evidence the plaintiffs have suffered was thereby increased; the defendants are not responsible in damages for the amount of such increased injury. The burden of proof is upon the defendants to establish, by a preponderance of legal evidence, that the injury caused by deposit of debris from defendants' operations has been increased, in whole or in part, by failure by plaintiffs to take such reasonable precautions."

The criticism made upon the instruction given by the court is that it left to the jury the question of whether or not the plaintiffs had been guilty of contributing to the injury done them by the defendants in failing to remove certain trees which had fallen into the stream, blocking it and thereby causing the water and the deposits therein to extend over more land than they would have done if the trees had been removed, since the evidence showed that the plaintiffs were guilty of contributory negligence in not so removing the trees as a matter of law.

We do not think that under the evidence the court would have been justified in taking that question away from the jury and holding that the plaintiffs were *per se* guilty of negligence in not removing the trees and thereby mitigating their damages. Under the circumstances disclosed by the record, that was a question for the jury, and the instruction given fairly submitted it to them.

The action of the court in permitting S. B. Maury to testify as an expert is assigned as error.

The defendants had introduced evidence tending to show that it was practically impossible for them to operate their mines without polluting the waters of Contrary creek. Maury was introduced by the plaintiffs for the purpose of controverting that contention, and gave some evidence which tended to do so, but his testimony was objected to upon the ground that it did not appear from his testimony that he had had any experience in mining iron pyrites or sulphur ore. It appeared that he was a scientific and practical engineer of long experience, and, though he did not claim

to be a mining engineer, he had been for many years a member of the American Society of Mining Engineers; that while he had no experience in filtering or purifying water from mines, he had been a city engineer and had experience in filtering and cleansing water for drinking purposes. He may not have been very highly qualified to speak as an expert upon the question as to which he was permitted to testify, yet we cannot say that it clearly appears that he was not a competent witness, and, unless we can so declare, under the well-settled rule of this court, permitting him to testify as an expert would furnish no sufficient ground for reversal. *Locomotive Works* v. *Ford,* 94 Va. 627, 641, 27 S. E. 509; *Va. Iron & Coal Co.* v. *Tomlinson,* 104 Va. 249, 51 S. E. 362; *Savage* v. *Brown,* 103 Va. 540, 49 S. E. 668; *Clinchfield Coal Co.* v. *Wheeler,* 108 Va. 498, 62 S. E. 388.

But if he were clearly an incompetent witness, his evidence could not have prejudiced the defendants, since we have seen, in disposing of the last preceding assignment of error, that it was immaterial whether the defendants could or could not operate their mines without polluting the waters of Contrary creek, as it was charged with doing; for, if they could not, that gave them no right to inflict the injuries complained of.

The next assignment of error, as we understand it, is based upon the refusal of the court to set aside the verdict because it was jointly against both the plaintiffs in error for the whole damages suffered, instead of against each for the injury, if any, caused by each.

There was evidence sufficient to justify the jury in finding that each of the plaintiffs in error had inflicted injury upon the defendants in error by polluting the stream, but it does not appear— indeed it is not contended—that the plaintiffs in error were joint wrong-doers. The instruction asked for by the plaintiffs upon this point, and given by the court without objection, treated the defendants as several wrong-doers, and told the jury that, "if it was possible to determine from the evidence what specific amount of damage has been caused by any one of the defendants, they should assess against such defendant the amount for which it was responsible; but if it is impossible to determine in what proportions the defendants have contributed to the injuries,

each who has contributed in any degree to the injury is responsible for the whole injury, and this although his act alone might not have caused the entire injury, and though, without fault on his part, the damage would have resulted from the act of another."

At the time this case was tried (May, 1909) the case of *Pulaski Coal Co.* v. *Gibboney,* 110 Va. 448, 66 S. E. 73, had not been decided, which holds that if several mining companies, acting independently, cast their refuse into a stream, thereby causing injury to a lower riparian owner, each is liable only for the damage done by its acts, and not for the result of the acts of others. While, as stated in that case, the weight of authority is in favor of the doctrine announced, the cases are not in harmony upon the subject, some holding that, where several mine owners contribute to the pollution of a stream, they are liable, either jointly or severally, for all the damages caused the lower riparian owner, especially where it is impossible to determine in what proportion each contributed to the injury. See *Day* v. *Louisville Coal and Coke Co., supra,* where authorities sustaining that view are cited.

The instruction given seems to have been based upon the principle announced in *Grand Trunk Co.* v. *Cummings,* 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266, in which it was held that, where separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury; and this although his act alone might not have caused the entire injury, and although, without fault on his part, the same damage would have resulted from the act of another. Whether the rule announced in *Pulaski Anthracite Coal Co.* v. *Gibboney, supra,* would control where it is impossible to determine in what proportion each of several wrongdoers had contributed to the injury complained of, need not be considered in this case, since the instruction given was not objected to by the defendants. The defendants must be treated, therefore, as having impliedly assented to the proposition laid down in the instruction, and they will not be heard here for the first time to question its correctness. See *Wallen* v. *Wallen,* 107 Va. 131, 57 S. E. 596; *Montague, &c.* v. *Allen, &c.,* 78 Va. 592, 49 Am.

Rep. 384; *Lambert* v. *Cooper,* 29 Gratt. (70 Va.) 61, 66; *Clark* v. *Sleet,* 99 Va. 381, 38 S. E. 183.

The remaining assignment of error is to the refusal of the court to set aside the verdict of $800 because not sustained by the evidence. Without discussing in detail the large mass of testimony taken on that subject, it is sufficient to say that, while there is a great diversity of opinion among the witnesses, and we might, if upon the jury, have given smaller damages, we cannot say that the verdict is without evidence to support it. While this court has the right to pass upon the evidence in the case, it is well settled, by a long line of decisions, that it will not reverse the judgment of the trial court and grant a new trial, because the verdict is contrary to the evidence, or without evidence to support it, except in a case of plain deviation from or palpable insufficiency of evidence, and not in a doubtful case, merely because the court, if on the jury, would have given a different verdict. *Kimball & Fink* v. *Friend,* 95 Va. 125, 143–'4, 27 S. E. 901, and cases cited; *C. & O. Ry. Co.* v. *Williams,* 108 Va. 689, 62 S. E. 796.

The judgment complained of is affirmed.

*Affirmed.*